# FREEMAN, NOOTER & GINSBERG

**05 0017**

---ATTORNEYS AT LAW---

LOUIS M. FREEMAN
THOMAS H. NOOTER*
LEE A. GINSBERG

CHARLENE RAMOS
OFFICE MANAGER

*NY AND CALIF. BARS

THE UNDERWOOD BUILDING
30 VESEY STREET, SUITE 100
NEW YORK, N.Y. 10007
(212) 608-0808
TELECOPIER (212) 962-9696
E-MAIL: FNGLAW@AOL.COM

October 4, 2004

Honorable Nina Gershon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

## Re: <u>United States v. Gilberto Edwards</u>
## 00 CR 1334(NG)

Dear Judge Gershon:

## Introduction

With the Court's permission, we file this letter brief on behalf of Gilberto Edwards in lieu of a formal motion to seek vacatur of Gilberto Edwards's sentence pursuant to 28 U.S.C. § 2255, relying on <u>Blakely v. Washington</u>, No. 02-1632, __ U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403, 2004 U.S. LEXIS 4573 (June 24, 2004).[1]

## Background

Gilberto Edwards was indicted for conspiracy to import cocaine, conspiracy to possess with intent to distribute cocaine, importation of cocaine, and possession of with the intent to

---

[1] A motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure is being submitted under separate cover; a pervious Rule 33 was dismissed without prejudice.

distribute cocaine. On March 27, 2001, an Eastern District of New York jury (Gershon, J., presiding) found Mr. Edwards guilty of conspiracy to import, yet acquitted him on the remaining three charges. Mr. Edwards was sentenced to 235 months on July 12, 2002. The conviction was appealed and affirmed by the United States Court of Appeals for the Second Circuit on August 28, 2003. This motion is timely under 18 U.S.C. § 2255. Mr. Edwards is presently serving his sentence at FCI Fort Dix. Although he has made the most of his time there, he remains steadfast about his innocence.[2]

## Summary of Argument

Mr. Edwards hereby moves, pursuant to 28 U.S.C. § 2255, to vacate his sentence. The sentence he received was the result of significant enhancements for obstruction of justice, role in the offense, and drug weight. These enhancements were based in large part upon the testimony of two cooperating witnesses, Tanya Thomas and Angela Rivera. However, new evidence in the form of a sworn affidavit shows both Ms. Thomas and Ms. Rivera fabricated a story and lied to the Government from the time of their first proffer meeting through their testimony at the defendant's trial. Therefore, the validity of these enhancements is now in controversy. Furthermore, these enhancements were the result of judicial fact-finding, which has been declared unconstitutional by the Supreme Court of the United States. See Blakely v. Washington, No. 02-1632, __ U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403, 2004 U.S. LEXIS 4573 (June 24, 2004). Notwithstanding the Second Circuit's ruling in United States v. Mincey, Nos. 03-1419L,

---

[2] Although maintaining his innocence, Mr. Edwards has nonetheless worked in various details, e.g. as an educational tutor/supervisor and on the UNICOR Production line. Mr. Edwards has also participated in a number of programs, e.g. completing 12 hours of anger management, completing a Step Parenting class, attending ten sessions of the Substance Abuse Support group, completing the Active Teen Parenting course, and completing the eight-week course Doing Time with A Right Mind. See certificates attached as Exhibit A. Mr. Edwards has clearly demonstrated a positive attitude while incarcerated. Moreover, in the four years he has been incarcerated, he was not disciplined once.

03-1520 (CON) 2004 U.S. App LEXIS 16587 (2d Cir. August 12, 2004), we submit that <u>Blakely</u> applies to the United States Sentencing Guidelines ("USSG"), and invalidates them in so far as they violate the <u>Sixth Amendment</u>. For this reason, the Court should vacate the sentence imposed on Gilberto Edwards. The argument that follows elaborates how the newly discovered evidence calls into question the validity of the enhancements, even without relying on <u>Blakely</u>; and how <u>Blakely</u> calls into question the constitutionality of the USSG.

## Argument

I.  The Newly Discovered Evidence Demonstrates that Tanya Thomas and Angela Rivera Fabricated Testimony that Implicated Gilberto Edwards, then Lied to the Government and Perjured Themselves at Trial to Protect Themselves and Another, Leading to the Conviction of the Defendant; In Light of This Newly Discovered Evidence, the Court Should Grant Mr. Edwards's § 2255 Motion.

Some time shortly before August of 2001, Mr. Edwards became acquainted with Christopher Thomas, also known by the name of Reese, who is an inmate at the Metropolitan Detention Center in Brooklyn. Through conversations Mr. Reese, the defendant learned that both Tanya Thomas and Angela Rivera lied to the government and perjured themselves while testifying at the defendant's trial.

Mr. Reese submitted a sworn declaration and an affidavit setting forth some aspects of his relationship with Ms. Thomas and Ms. Rivera, as well as some of the relevant portions of the conversations Mr. Reese had with the two women. *Inter alia*, Ms. Thomas told Mr. Reese of her participation in the drug trade and her arrest in relation to the instant case. Ms. Thomas also confided in Mr. Reese that she planned to fabricate her testimony in the instant case by implicating Mr. Edwards—whom she referred to as Darnell Johnson—because she had not known him very long and he did not live in the area.  According to Ms. Thomas (as stated in her

conversations with Mr. Reese), Mr. Edwards was not involved in the drug conspiracy in any way. Rather, the actual perpetrator was a "Haitian" male, for whom she worked importing drugs into the United States and recruiting others to do the same. Ms. Thomas told Mr. Reese that she was fearful the Haitian male would kill her if she informed the authorities that he was the leader of the drug conspiracy; and she confided in him that she feared that if she told the government about the Haitian male, the prosecutor would discover her prior criminal activity, which was unknown to them. Ms. Thomas ultimately disclosed to Reese that in order to avoid incriminating the Haitian male, and thus protect herself, she chose to lie to the prosecutors and then perjure herself by implicating the defendant. Mr. Reese's declaration is corroborated by Ms. Thomas's own assertion at a plea allocution that "she helped someone there overseas get a girl to bring drugs into the United States." See Transcript of Plea of Tanya Thomas, 3/1/01, p. 16, line 13.

Mr. Reese also had conversations with Angela Rivera, who provided testimony against the Mr. Edwards at trial. Ms. Rivera told Mr. Reese that she had never known or met Gilberto Edwards until her arrest in the instant case.[3]

### A. Prior to Christopher Reese's Conversations with Gilberto Edwards, the Testimony of Christopher Reese was not Discoverable Through Due Diligence.

The conversations that Christopher Reese had with Ms. Thomas and Ms. Rivera were not discoverable prior Mr. Reese and Mr. Edwards meeting in jail. Both the prosecution and the defense conducted extensive and exhaustive investigations, however, neither the government nor the defendant knew of Mr. Reese's existence as a witness, let alone the nature of the information

---

[3] Mr. Reese is prepared to go forward with his testimony at a hearing. At an earlier hearing, Mr. Reese asserted his Fifth Amendment privilege because, at that time, he had not resolved his own case.

he possessed. In fact, the only persons who could have known of the existence of Mr. Reese were the cooperating witnesses in the government's case: Tanya Thomas and Angela Rivera.

The only way this evidence could have surfaced was if Mr. Reese made himself known. This was impossible because Mr. Reese did not know Tanya Thomas's scapegoat by the name "Gilberto Edwards," but rather the pseudonym "Darnell Johnson." Only after meeting Mr. Edwards did Mr. Reese come to realize that the Darnell Johnson Tanya Thomas had implicated was in fact the defendant in this case. Therefore, no matter how diligently he searched, Mr. Edwards could not have discovered Mr. Reese.

II. **Notwithstanding the Second Circuit's Ruling in <u>Mincey</u>, Gilberto Edwards Maintains that the Sentence Imposed in His Case was Unconstitutional Under <u>Blakely</u>, and this Warrants Vacatur of the Sentence.**

Gilberto Edwards was sentenced to 235 months, a sentence which was enhanced significantly for alleged obstruction of justice, role, and drug weight. These enhancements were based almost exclusively on the testimony of Ms. Thomas and Ms. Rivera, and the validity of these enhancements is now in controversy. Furthermore, these sentence enhancements were the result of judicial fact-finding, which has been declared unconstitutional by the Supreme Court of the United States. See <u>Blakely v. Washington</u>, No. 02-1632, __ U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403, 2004 U.S. LEXIS 4573 (June 24, 2004). Although the Second Circuit has ruled the USSG remain valid, pending the decision in <u>United States v. Booker</u>, No. 03-4225, 2004 U.S. App. LEXIS 14223, *3 (7th Cir. July 9, 2004) and <u>United States v. Fanfan</u>, No. 03-47-P-H, 2004 U.S. Dist. LEXIS 18593 (D. Me. June 28, 2004), <u>see United States v. Mincey</u>, Nos. 03-1419L, 03-1520 (CON) 2004 U.S. App LEXIS 16587 (2d Cir. August 12, 2004), Mr. Edwards submits

that <u>Blakely</u> applies to the United States Sentencing Guidelines ("USSG"), and invalidates them

in so far as they violate the Sixth Amendment.

> ### A. The Constitutionality of the United States Sentencing Guidelines is Entirely Unclear, and the Supreme Court of the United States Will Soon Provide Guidance to this Court.[4]

In <u>Blakely v. Washington</u>, No. 02-1632, __ U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403,

2004 U.S. LEXIS 4573 (June 24, 2004), the Supreme Court of the United States found certain

aspects of Washington state's sentencing laws unconstitutional. In so doing, the Court clarified

its previous ruling in <u>Apprendi</u>, stating:

> [T]he "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a
> judge may impose *solely on the basis of the facts reflected in the jury verdict or
> admitted by the defendant* . . . In other words, the relevant "statutory maximum" is
> not the maximum sentence a judge may impose after finding additional facts, but
> the maximum he may impose *without* any additional findings. When a judge
> inflicts punishment that the jury's verdict alone does not allow, the jury has not
> found all the facts "which the law makes essential to the punishment," and the
> judge exceeds his proper authority.

<u>Blakely</u>, 24 S. Ct. at 2537, 159 L. Ed. At 413-14, 2004 U.S. LEXIS 4573 at *13-14 (emphasis in

original) (internal citations omitted).

Although the majority nonchalantly expressed no opinion on the constitutionality USSG,

<u>Blakely</u>, 24 S. Ct. at 2538 n.9, 159 L. Ed. At 415 n.9, 2004 U.S. LEXIS 4573 at *17 n.9, <u>Blakely</u>

has led to upheaval in federal courts around the country.[5]   Compare <u>United States v. Pineiro</u>,

---

[4] At the very least, our position is that <u>Blakely</u> applies to the United States Sentencing Guidelines, and those aspects of the United States Sentencing Guidelines that require a sentencing judge to engage in judicial fact finding by a preponderance of the evidence to increase a defendant's sentence are unconstitutional under <u>Blakely</u>.

[5] Recently, Judge Panner, District Court Judge for the District of Oregon, dealt another blow to the USSG.  <u>See</u> United States v. Detwiler, CR 03-372-PA, 2004 U.S. Dist LEXIS 20132 (D. Or. October 5, 2004)

No. 03-30437, 2004 U.S. App. LEXIS 14259 (5th Cir. July 12, 2004) (finding <u>Blakely</u> does not apply to the USSG), with <u>United States v. Booker</u>, No. 03-4225, 2004 U.S. App. LEXIS 14223, *3 (7th Cir. July 9, 2004) (finding the USSG are unconstitutional), and <u>United States v. Ameline</u>, No. 02-30326, 2004 U.S. App. LEXIS 15031, *14-15 (9th Cir. July 21, 2004) (finding the parts of the USSG are unconstitutional and severable, and district courts can convene a sentencing jury), and <u>Penaranda</u>, 2004 U.S. App. LEXIS 14268 at *2 (certifying questions to the Supreme Court of the United States). Among the courts that have found <u>Blakely</u> does apply to the USSG, there is a very wide and disparate range of conclusions. <u>Compare</u> <u>United States v. Croxford</u>, No. 02-CR-00302, 2004 U.S. Dist. LEXIS 12156, 22, 40 (D. Utah June 29, 2004) (finding the USSG as a whole unconstitutional, returning to pre-USSG sentencing scheme but using guidelines as a guide), with <u>United States v. Shamblin</u>, No. 2:03-00217, 2004 U.S. Dist. LEXIS 12288, *24-25 (S.D. W. Va. June 30, 2004) (finding the USSG remain the law to the extent they can be applied in accordance with <u>Blakely</u>, so "the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for Apprendi purposes[]"), and <u>Ameline</u>, No. 02-30326, 2004 U.S. App. LEXIS 15031 at *32-37 (9th Cir. July 21, 2004) (preserving the Congressional intent of honesty, uniformity, and proportionality by severing the offensive portions of the USSG).

The majority in <u>Blakely</u> did not address the USSG because the issue was not before them, but now it is. On Monday, October 4, 2004, the Supreme Court heard oral arguments in <u>Booker</u> and <u>Fanfan</u>, *supra*. While the decision is obviously forthcoming, there is reason to believe the Court will act swiftly. Indeed, several groups, political and otherwise, have urged the Court to accelerate their response. For instance, Congress passed a concurrent resolution recommending the Supreme Court "act expeditiously to resolve the current confusion and inconsistency in the

Federal criminal justice system by promptly considering and ruling on the constitutionality of the Federal Sentencing Guidelines." S. Con. Res., 108th Cong. § 2, 4 (2004) available at http://sentencing.typepad.com/ sentencing_law_and_policy/files/senate_resolution.pdf. Congress expressed grave concern that the "current confusion in the lower Federal courts has and will continue to produce results that disserve the core principles underlying the Sentencing Reform Act . . . ." Id. at 3.

## B.   Blakely Applies to the United States Sentencing Guidelines.

In Blakely, Justice O'Connor predicted that the majority's holding would force district courts across the country to grapple with the question of how to conduct sentences because the Blakely decision "casts constitutional doubt" over the Guidelines. Blakely, 124 S. Ct. at 2548-49, 159 L. Ed. at 426, 2004 U.S. LEXIS 4573 at *47-48 (O'Connor, J., dissenting). Indeed, that is what has resulted. As of the writing of this letter, a majority of sentencing judges in the district courts of the Second Circuit has either postponed sentencing, refused to apply upward adjustments for facts not admitted by the defendant or found by a jury, or found the Guidelines unconstitutional. See, e.g., Einstman, 2004 U.S. Dist. LEXIS 13166 (declaring the Guidelines unconstitutional in their entirety); United States v. Landgarten, No. 04-CR-70, 2004 U.S. Dist. LEXIS 13172 (E.D.N.Y. July 15, 2004) (ordering a sentencing jury to determine whether proposed enhancements had been proven beyond a reasonable doubt); but see United States v. Lauersen, S2 98 Cr. 1134 (WHP), 2004 U.S. Dist. LEXIS 14491, *7-8 (S.D.N.Y. July 29, 2004) (electing to sidestep the Constitutionality issue because the law is so unclear).

The Government may maintain that Federal Courts are bound by precedent to apply the USSG. Although this seems to be the position of Mincey, federal courts around the nation have

roundly rejected this argument.  See, e.g., Booker, 2004 U.S. App. LEXIS 14223 at *13-16,

United States v. Einstman, No. 04-CR-97, 2004 U.S. Dist. LEXIS 13166, 15-16 (S.D.N.Y. July

14, 2004) (adopting the reasoning of Booker).  In Booker, Judge Posner provided an extensive

survey of the Supreme Court cases pertaining to the USSG.  He concluded that district and

circuit courts are free to apply Blakely to the USSG without fear of overruling precedent because

the Supreme Court had never entertained a Sixth Amendment challenge to the USSG.  See

Booker, 2004 U.S. App. LEXIS 14223 at *13-16; see also Ameline, 2004 U.S. App. LEXIS

15031 at *23-27 (finding the same).

i.      **The Distinctions Between the United States Sentencing Guidelines and the Washington Sentencing Scheme do not Protect the United States Sentencing Guidelines from a Sixth Amendment attack.**

The Government may argue that the Guidelines are distinguishable from Washington's

sentencing scheme because of the difference in their operation: the "presumptive sentencing

range" under the Washington system created a statutory maximum distinct from a broader

statutory maximum, while the federal system only has one statutory maximum.  Under this view,

since the Guidelines merely operate within that one statutory maximum, the narrow sentencing

range dictated by the Guidelines is not the relevant statutory maximum for Blakely purposes.  Id.

This argument "flies in the face of the obvious," Einstman, 2004 U.S. Dist. LEXIS 13166, at *9,

since each significant feature of the federal Guidelines corresponds to a feature of the

Washington scheme.  Both systems are subject to an absolute maximum sentence, above which

no sentence can ever exceed.  Id.  Both are subject to a narrower presumptive range specific to

the underlying offense, and both allow a judge to enhance a sentence beyond the presumptive

range based on facts not admitted by the defendant or found by a jury.  Id.

As several opinions have noted, this argument distinguishing the two schemes is overly formalistic. See, e.g., Toro, 2004 U.S. Dist. LEXIS 12763, at *18 ("the concern in Blakely was less the origins of any sentencing structure and more the *effects* of any sentencing scheme") (emphasis in original). Whether the narrow sentencing ranges are called "presumptive sentencing ranges" or "guidelines" or "statutory maximums," the effect is the same. See Apprendi, 530 U.S. at 494 ("the relevant inquiry is not one of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"). Blakely found that the relevant statutory maximum was "the maximum [the judge] may impose *without* any additional findings," Blakely, 124 S. Ct. at 2537, 159 L. Ed. at 413-14, 2004 U.S. LEXIS 4573 at *14, and therefore the Washington sentencing scheme violated the Sixth Amendment. Similarly, the Guidelines, which allow a judge to enhance a sentence beyond the presumptive range *after* making additional findings, also violate the Sixth Amendment.

The Government also may draw a distinction between the two schemes based on whether the guidelines were administratively promulgated or legislatively enacted. This argument, too, attempts to distinguish the federal Guidelines from the Washington scheme based on differences that are constitutionally insignificant. Blakely, 2004 U.S. LEXIS 4573, at *50 (the structure of the schemes "does not, as the Government half-heartedly suggests, provide any grounds for distinction" (O'Connor, J., dissenting)). Despite the different origins of the sentencing schemes, the effects are still the same; "[b]y having the Legislature create the grid, instead of having the Legislature create the Commission that creates the grid, all Washington did was eliminate the middle man." Einstman, 2004 U.S. Dist. LEXIS 13166, at *13-14. In addition, Congress may directly modify or revoke amendments to the Guidelines, 28 U.S.C. § 994(p), much like the

Washington legislature may directly modify or revoke their state's sentencing laws. Therefore the Guidelines have "the force and effect of laws," Penaranda, 2004 U.S. App. LEXIS 14268, at *17 (citing Mistretta, 488 U.S. at 413 (Scalia, J., dissenting)), and the distinction based on their origin are of no consequence.

### C. Blakely Does Not Render the Entire United States Sentencing Guidelines Unconstitutional, but Requires a Court to Determine Which Aspects Violate the Sixth Amendment and Preserve the Portions that do not Violate a Defendant's Constitutional Rights.

In Blakely, the Supreme Court did not find determinate sentencing schemes unconstitutional. In fact, the majority recognized that Washington enacted a sentencing scheme for legitimate, policy-based reasons "including proportionality to the gravity of the offense and parity among defendants." Blakely, 124 S. Ct. at 2540, 159 L. Ed. at 416-17, 2004 U.S. LEXIS 4573 at *22 (citing Wash. Rev. Code Ann. § 9.94A.010 (2000)). The issue the majority resolved was not whether sentencing reforms like those in Washington are constitutional, but rather "only . . . how [such reforms] can be implemented in a way that respects the Sixth Amendment." Blakely, 124 S. Ct. at 2540, 159 L. Ed. at 416, 2004 U.S. LEXIS 4573 at *22. However, although the benefits of the USSG are advantageous to the United States and defendants alike, they cannot trump constitutional rights. Thus, Blakely sought to implement such a scheme in a way that protected a defendant's constitutional rights. Id.

Indeed, the holding of Blakely itself reflected the majority's intent to uphold sentencing reform efforts. In ruling that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant* [,]" Blakely, 124 S. Ct at 2537, 159 L. Ed. at 413, 2004 U.S. LEXIS 4573 at *13-14 (emphasis in original), the majority focused exclusively on the fifty-three month

maximum sentence mandated by the WSRA. The Court clarified that the "relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id. at 2537, 159 L. Ed. at 413-14, 2004 U.S. LEXIS 4573 at *14. Thus, when determining the maximum sentence a judge could constitutionally impose, the majority did not invalidate the Washington guidelines wholesale, but espoused those aspects that did not violate the Sixth Amendment.

Despite these obvious analytical realities, the Government may argue that if a Court finds Blakely applicable to the USSG, then that Court must invalidate the USSG as a whole. Some courts have adopted this approach. See, e.g., United States v. Medas, No. 03-CR-1048, 2004 U.S. Dist. LEXIS 12135 (E.D.N.Y. July 1, 2004); Einstman, 2004 U.S. Dist. LEXIS 13166; United States v. Marrero, No. 04-CR-0086, 2004 U.S. Dist. LEXIS 13593 (S.D.N.Y. July 21, 2004); Croxford, 2004 U.S. Dist. LEXIS 12825.

However, this Court should reject this argument and seek to preserve the USSG to the greatest extent possible. In fact, this is precisely how Blakely handled the WSRA. See Blakely, 124 S. Ct. at 2540, 159 L. Ed. at 416, 2004 U.S. LEXIS 4573 at *22. The Government's argument ignores the essence of Blakely: the majority acknowledged the necessity of sentence reform yet made it clear that as necessary as sentencing reform may be, the implementation of such reforms cannot come at the expense of a defendant's constitutional rights. It is for this reason that Blakely upheld the constitutionality of the WSRA, striking *only* those portions that violated the defendant's Sixth Amendment Rights. Id.

        i.    **Blakely Invalidates Only Those Aspects of the USSG that Require Sentence Enhancement Based on Facts not Admitted or Proved Beyond a Reasonable Doubt.**

In an effort to uphold the sentencing scheme, <u>Blakely</u> made it perfectly clear that the *only* portions of the WSRA's determinate sentencing scheme that violated the <u>Sixth Amendment</u> were those sections that allowed a judge to increase a sentence based on facts not proven to a jury beyond a reasonable doubt. <u>Id.</u> As shown above, the majority expressly adopted the statutory minimum as determined under the WSRA—*not* the minimum and maximum of the statute of conviction. <u>Blakely</u> at 2537, 159 L. Ed. at 413-14, 2004 U.S. LEXIS 4573 at *13-14. <u>Blakely</u> therefore requires a sentencing judge to invalidate *only* those portions of a sentencing system that violate a defendant's <u>Sixth Amendment</u> rights, but to preserve those aspects that survive constitutional attack. The only portions of the USSG that are unconstitutional under <u>Blakely</u> are sentence enhancements and upward departures that require a judge to find facts by a preponderance of the evidence.

Here, Mr. Edwards's sentence was enhanced for obstruction of justice, USSG 3C1.1. This is a disputed fact that has not been admitted by the defendant nor proven beyond a reasonable doubt to a jury. Furthermore, the obstruction resulted from Mr. Edwards's allegedly false testimony--testimony he gave under oath and which is corroborated by the newly discovered evidence in this case. Under <u>Blakely</u>, the obstruction of justice enhancement resulting from a defendant's allegedly false testimony can only be applied if the Government proves beyond a reasonable doubt that the testimony was actually false.

Moreover, Mr. Edwards's sentence was enhanced because the Court determined that he was the leader of a narcotics operation involving at least five persons, USSG 3B1.1(c), and that the instant offense involved more than five kilograms of cocaine, USSG 2D1.1(c)(4). Application of these enhancements violates <u>Blakely</u> and the <u>Sixth Amendment</u> because they were based on judicial fact-finding. Therefore, the manner in which the factual basis was

determined is unconstitutional and the Court should convene a sentencing hearing to allow the Government to prove these facts to a jury, beyond a reasonable doubt.[6]

### ii.     However, Blakely Endorses a Procedure Whereby the Guidelines' Minimum and Maximum Sentence Range Would be Preserved.

Utilizing the relevant guideline range under the USSG is not inconsistent with Blakely. Id. With the goal of implementing sentencing reforms "in a way that respects the Sixth Amendment," Blakely, 124 S. Ct. at 2540, 159 L. Ed. at 416, 2004 U.S. LEXIS 4573 at *22, the majority required the Washington judge to use the sentencing range as determined by the WSRA. Id. This requirement is a clear indicator that the USSG base-sentencing range is not only constitutional, but is the correct mechanism under Blakely and Apprendi. This is the range that reflects the facts proven to a jury beyond a reasonable doubt or admitted by the defendant. See Shamblin, 2004 U.S. Dist. LEXIS 12288 at *24-25. The court in Shamblin went on to echo the reasoning of Blakely, finding that the USSG "are the *law* which bind this court in sentencing matters, and to the extent that the Guidelines can be applied in a manner consistent with Sixth Amendment, the court shall strive to do so." Shamblin, 2004 U.S. Dist. LEXIS 12288 at 26 (emphasis in original) (citing Blakely, 124 S. Ct. at 2540, 159 L. Ed. at 416, 2004 U.S. LEXIS 4573 at *22). Thus, the court should strive to apply the USSG in a manner consistent with the Sixth Amendment. Id.

---

[6] In addition to the unconstitutionality of the judicial fact-finding method that was used to find, by a preponderance, the obstruction, role, and drug amount enhancements, a stand-alone, alternative basis for this motion is the false testimony of Tanya Thomas and Angela Rivera.

### iii.   Courts that Declare the United States Sentencing Guidelines Unconstitutional and Revert to Indeterminate Sentencing Schemes Ignore the Goal of Blakely and the Nature of its Holding.

Although some courts have found the USSG unconstitutional as a whole, these courts seem all too willing to throw out 20 years of sentence reform. Some have even returned to the indeterminate sentencing scheme the WSRA and the USSG replaced, apparently using the guidelines as a guide. See, e.g., Medas, 2004 U.S. Dist. LEXIS 12135; Einstman, 2004 U.S. Dist. LEXIS 13166; Marrero, 2004 U.S. Dist. LEXIS 13593; Croxford, 2004 U.S. Dist. LEXIS 12825. Croxford even went so far as to base the enhanced, indeterminate sentence, on facts it conceded it was not constitutionally allowed to consider under Blakely. See Croxford, 2004 U.S. Dist. LEXIS 12825 at *44-45.

Adopting this position and reverting to an indeterminate sentencing scheme ignores the goal of Blakely and the true nature of its holding. Clearly, Blakely does not render sentencing reform and guidelines unconstitutional. Blakely, 124 S. Ct. at 2540, 159 L. Ed. at 416, 2004 U.S. LEXIS 4573 at *22. In fact, the holding in Blakely does not depend on the existence of a guideline system at all. Rather, Blakely invalidates all sentence enhancements that result from judicial fact finding. In other words, Blakely does not stand for the proposition that enhancements *under sentencing guidelines* are unconstitutional. Blakely simply stands for the proposition that sentences cannot be increased as a result of judicial fact finding. Therefore, if a court utilizes indeterminate sentencing yet considers facts not admitted or proven beyond a reasonable doubt, see, e.g., Croxford, 2004 U.S. Dist. LEXIS 12825 at *44-45, it is inconsequential that the court is doing so outside of a determinate sentencing scheme. By

engaging in judicial fact finding to increase a sentence indeterminately, a court still violates the Sixth Amendment.

Although it may be possible for a court to rely on only those facts proven beyond a reasonable doubt when sentencing under an indeterminate system, this would prove exceedingly difficult because Blakely mandates a 21st century sentencing approach. For twenty years, sentencing courts have been required to consider facts that have been proved by a preponderance of the evidence. Before the USSG, courts were required to consider all relevant and instructive evidence before them. See, e.g., Marrero, 2004 U.S. Dist. LEXIS 13593 at *8-9 (finding "informed discretion" includes all relevant information available to the court). Blakely, however, requires courts to sentence a defendant based *solely* on facts admitted or proven beyond a reasonable doubt to a jury. Essentially, Blakely requires a sentencing court to do something it has *never* done: make absolutely no findings of fact and depend solely on the jury's findings and defendant's admissions. It may simply be too thorny for a court to engage in indeterminate sentencing within the requirements of Blakely when Blakely itself provides a constitutional alternative. Blakely at 2537, 159 L. Ed. at 413, 2004 U.S. LEXIS 4573 at *13-14. That is, the USSG provides the sentence range in the form of base guideline levels and enhancements solely for proven or admitted facts.

### D.   The Court Should Sever the Unconstitutional aspects of the USSG, Preserving the Overarching Intent of Congress.

The Government may claim that if Courts find that Blakely applies to the USSG, Courts must invalidate the USSG as a whole because enhancing – but not reducing – facts to be submitted to the jury and proven beyond a reasonable doubt distorts the operation of the sentencing system in a manner that would not have been intended by Congress or the Sentencing

Commission. Therefore, because the guidelines have been developed with judges—not juries—determining the facts relevant for sentencing, requiring these facts to be proven beyond a reasonable doubt to a jury frustrates the intent of Congress so thoroughly that the USSG are doomed.

Although it may be true that fact finding by a jury was not the method prescribed by Congress, this does not render the USSG unconstitutional as a whole. The Supreme Court has held that the courts "should refrain from invalidating more of the statute than is necessary . . . . [Whenever] an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of th[e] court to so declare, and to maintain the act in so far as it is valid." Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684-85 (1987) (internal quotations omitted).) Furthermore, the "'relevant inquiry . . . is whether the statute will function in a *manner* consistent with the intent of Congress' after the unconstitutional provisions have been severed." Id. (emphasis in original). Finally, "'[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.'" Buckley v. Valeo, 424 U.S. 1, 108 (1976) (per curiam), quoting Champlin Refining Co. v. Corporation Comm'n of Oklahoma, 286 U.S. 210, 234 (1932)). Therefore, as the Ninth Circuit pointed out when it considered Blakely's impact on the USSG, courts must "begin with the 'presumption . . . in favor of severability' . . . because '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" Ameline, U.S. App. LEXIS 15031 at *32 (quoting Regan v. Time, Inc., 468 U.S. 641, 652-53, 82 L. Ed. 2d 487 (1984)).

### i.   The Intent of Congress was to Replace an Inconsistent Indeterminate Sentencing Scheme with a System that Would Ensure Uniformity, Honesty, and Proportionality.

While it is true that Congress assigned the fact-finding role to the Courts, this does not speak to Congress's overarching intent in enacting the USSG. The USSG replaced an indeterminate scheme and were established to further legitimate, policy based goals: uniformity, honesty, and proportionality. See Ameline, U.S. App. LEXIS 15031 at *35-36 (quoting U.S. Sentencing Guidelines. § 1A1.1, cmt. n.3 (2003)). By enacting the USSG, Congress sought to achieve uniformity by "'narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders.'" Id. Under the indeterminate sentencing scheme, defendants frequently served far less time than the sentence of the district court, so Congress sought to promote honesty among the system by promoting the USSG. Ameline, U.S. App. LEXIS 15031 at *35. Congress wanted the USSG to achieve proportionality by "treating different criminal conduct differently." Ameline, U.S. App. LEXIS 15031 at *36.

The Court should measure severability based on Congress's intended goals of uniformity, honesty, and proportionality—not solely on the corollary intention of judicial fact-finding. Here, the Court must consider whether the USSG "will function in a *manner* consistent with the intent of Congress" Alaska Airlines, 480 U.S. at 685 (emphasis in original). Obviously, if the Court adopted the Government's view that the sole relevant intent of Congress was to grant judges fact finding power, relieving judges of this power would create a system that was wholly at odds with the intent of Congress. However, that is not the question the Court must answer. The presumption of severability is not overcome simply because Judges are assigned the fact finding duties under the USSG. Rather, the relevant inquiry is whether relieving judges of their fact-

finding responsibilities precludes the USSG from functioning in a manner consistent with the goals of uniformity, honesty, and proportionality.  See Id.

> ii.   **The USSG will Continue to Advance the Stated Goals of Uniformity, Honesty, and Proportionality if the Requirement of Judicial Fact Finding is Severed.**

The goals of the USSG do not depend on judicial fact finding by a preponderance of the evidence. It is indeed true that the Sentencing Commission "believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." U.S. Sentencing Guidelines. § 6A1.3 cmt. (2003). In the wake of Blakely, it would appear the belief of the Commission is less than correct.

However, the goals of the USSG will continue to thrive if the offending portions are severed. The USSG "seek to achieve these Congressional objectives because they contemplate similar sentences once a given set of facts are found to exist." Ameline, U.S. App. LEXIS 15031 at *36. The issue here is simply how these facts are determined and who can determine them. Although severance of the offensive aspects would shift the procedural burden of determining these facts, "severance would have no effect on the Congressional goal of achieving consistency of sentences in cases that involve similar offense conduct." Id. In other words, the prosecution would still face a burden of proof—albeit a heightened one required by the Sixth Amendment— and the prosecution would face this in every case where there are enhancements. Once the prosecution proved these facts beyond a reasonable doubt, as opposed to a preponderance, the guidelines would still contemplate similar sentences based on these facts.

The Government might lament that it would likely be impossible, as a practical matter, to charge and prove to a jury beyond a reasonable doubt all enhancing factors in all cases and that this results in disparate sentences for defendants whose criminal conduct was actually similar. However, "[t]his, of course, also occurred when district judges determined material sentencing facts on the basis of a preponderance of the evidence standard." Ameline, U.S. App. LEXIS 15031 at *39. Additionally, the indeterminate sentencing system that the USSG replaced was rife with discrepancies far more disparate than a severed USSG would produce. Essentially, then, the Government's argument is one of enhanced difficulty. Blakely's resounding response is that under the Sixth Amendment all facts that increase a defendant's sentence *must* be proven to a jury beyond a reasonable doubt—no matter what.

Finally, if the Court holds that Blakely invalidates the entire USSG, the Court "would do far greater violence to Congress' intent than if we merely excised the unconstitutional procedural requirements." Ameline, U.S. App. LEXIS 15031 at *36. The Government might argue that if the Court severs the offensive portions of the USSG, then the Court would in essence be lawmaking, not effectuating congressional intent. Yet, in the same breath, the Government regularly asks the Court declare twenty years of sentencing reform unconstitutional—forcing the Court to return to an indeterminate sentencing system. The same system the Supreme Court of the United States has repeatedly avoided by bending over backwards to uphold the USSG. As the Ninth Circuit pointed out, if the Court adopted the Government's reasoning, the Court would establish an indeterminate sentencing scheme "by judicial fiat." Ameline, U.S. App. LEXIS 15031 at *36. Returning to an indeterminate sentencing scheme precludes Congress' goals of uniformity, honesty, and proportionality. However, severing the unconstitutional aspects of the

USSG allows these goals to be realized because severance merely modifies the burden of proof and audience to which the facts must be proved.

## Conclusion

For the aforementioned reasons, this Court should vacate Gilberto Edwards's sentence pursuant to 28 U.S.C. § 2255. The enhancements to Mr. Edwards's sentence rested on the testimony of Ms. Thomas and Ms. Rivera, and the validity of that testimony and the resulting enhancements are now in controversy. The substance of Mr. Reese's declaration directly contradicts the testimony of these two witnesses, calling into question the integrity of the verdict. Moreover, these sentence enhancements were the result of judicial fact-finding by a preponderance of the evidence, which has been declared unconstitutional by the Supreme Court of the United States. Mr. Edwards therefore submits that Blakely applies to the USSG, and invalidates them insofar as they violate the Sixth Amendment. Accordingly, this Court should vacate Mr. Edwards's sentence.

Respectfully Submitted,

Louis M. Freeman
Attorney for Gilberto Edwards

LF/jg
cc: AUSA Adam Schuman